and the U.S. Department of Education. Your Honor, Jonathan Rosenberg for Janet Tingling, the appellant. Can the court hear me? Yes. Yes, indeed. Thank you very much. If I may proceed. Please. May it please the court. In this case, to this day, there is at this point still no direct evidence or even undisputed evidence that ECMC, one of the two parties involved in this matter at this point, owns eight of the student loans or an assignee of eight of the student loans relating to Ms. Janet Tingling. When ECMC entered the case, they merely wrote a letter or provided a letter stating that they are advising the court that these are eight loans that they have ownership over And under a proper Rule 24 procedure, Ms. Tingling, by the way, acting pro se, and that may have been the first mistake, but not a legal one in this case, she accepted their entry into the case, but she did not accept when they entered the case that they owned those loans. It's very clear and it needs to be addressed because it goes on and on about this and opposed my friend across the aisle, ECMC's counsel, talks about how she stipulated, my client Ms. Tingling, stipulated to their ownership of the loans with this consent for them to enter the case under Rule 24 A and B. To be very clear, it needs to be very clear, and as our brief says as well, the consent order at Appendix 26 very clearly says that the word is advised, having advised the court, or having been advised is the sentence, having been advised that ECMC and so on is the owner of the loans, it's consented that they enter as a party. But immediately, once the pretrial conferences went along, Ms. Tingling exercised her very clear right to dispute their ownership of the loans, and she did so three times, remarkably. There was a marked up joint pretrial memorandum at around, I think it's A37 in the record, which she did not mark up, as the briefs on ECMC's side will tell you, and as the record will indicate, had written by counsel for ECMC and signed in this draft marked up joint pretrial memorandum by both respondents, not by my client Ms. Tingling, where they note what is stipulated to and what's not stipulated to, it's a draft document anyways, A37, and this was not acceptable to Ms. Tingling, who promptly submitted at A53 her own joint pretrial memorandum, which very clearly states at A53 that she disputes their ownership of all eight loans, right, she disputes ECMC's ownership because the promissory notes don't match the dates of matriculation. She disputes these two promissory notes also, which don't include all eight loans, as to the authenticity of the notes. And we can get into the signing issues, but that's not really what this case is about. And she also clearly indicates, paragraph seven of A53, that ECMC has failed to prove they have legal ownership. Even preponderate, she didn't use that word, but it's clear that they nearly enter the proceeding and everyone just kind of trusts they own these eight loans. But there's really nothing to show ownership, especially the proceeding where we're talking about a large amount of money that my client is disputing and then seeking to have discharged under the hardship law. We then get to, finally, A63, before any pretrial order is entered. My client files a motion by hand. She's requesting the court allows all consent to my section of the memorandum. Most importantly, she says in this very shorthand written motion that defendants' proof of legal She disputes it, in other words. I could read the handwriting on and on, but she disputes it and it explains in her application support in the record, A64, why she disputes ownership. So three times she says to the court, this is not right. I don't know who these people are. I don't know why they think they own the loans. The promissory notes aren't good. We have an issue of fact that needs to be looked at. Now my client consented to many of the loans brought forth by education. She consented to some of the amounts by education, and she disputed some things that were, in her view, improper as to the promissory notes. In any event, it gets to a pretrial order that ultimately, and we discussed three issues that she's precluded from bringing before the court without any hearing on why these issues are precluded. Essentially, the bankruptcy court adopts the word of ECMC that they own these eight loans and says, Plaintiff can't bring evidence regarding anything disputing either the loan amounts or the ownership, and then also no medical evidence, which they claim the pro se waived, and that is not clear at all in the record. The big argument for my friends across the aisle, and this is more to ECMC's ownership, is that because she consented for ECMC's entry into the case, she therefore agreed to their ownership of the loans. And we can see throughout the pretrial proceedings, she's waving her hand and saying very clearly and very, I think, courteously to the court as a pro se, this is not the case. These loans are not owned by this organization, whoever they are, and we need proof of that before we proceed to trial. In any event, I think it's a weak argument, and I don't think it needs to be addressed too much that I wrote in my brief that the amounts are so disputed. I think that's not the biggest deal here. Okay, because at the end of the day, I agree with the government. There could be a judgment proceeding involving the actual amounts, though it does, I think, preclude my client if they give an approximation, right, in an order in the bankruptcy proceeding that later might have stopped her from challenging the amounts. That's an issue. But the big due process issue really involves my client not being able to bring up medical arguments during the proceedings, or at least those were not supposed to be considered under the pretrial order. And the big pretrial order here, the big issue is A-1-15. That is the due process violation, A-1-15. Excuse me, you have to... Where the court... Absolutely. Go ahead. Yes, Judge. A-1-14 to A-1-17, we see, or I should say to A-1-21 is a pretrial order that ultimately says Ms. Kingling can do nothing to bring up medical issues. And she stipulates also that something she doesn't stipulate to at all, stipulated facts that call it, that the ownership is conclusively determined as to ECMC. Well, these were not issues that were determined. They were not determined by any hearing. They're not determined by any evidence except, I'm not going to say except because this spreadsheet was put together by UCMC. There was nothing to prove ownership of the loans by UCMC. To this day, we don't really know why anybody can't just enter the proceedings on consent of a party and say, we own the loans, separate and apart from the due process issue. This is not a new issue. I'm just saying, as a consequence, clearly anybody entering a proceeding can just write a letter saying, we are an organization, we deal with student loans. Here are some promissory notes. They don't relate to us, but hey, we own these eight loans. That's a very scary prospect. I don't want to get into the word fraud because I don't believe that occurred in this case, but it can lead to that and I think it may be without evidence. In financial matters involving loans, it's a very serious thing with the federal government. With that in mind, the only problem here that this court has to determine, and I think the burner factors, we never really got to have those looked at in the hearing of this case, the trial of this case, because without my client being able to present issues regarding her medical or health or any psychological well-being or anything involving who she was as far as her health, that order precluded her from ultimately arguing the burner factors properly at trial. Now, we all know when a pro se goes before the court, and these are my words, not the in this case, it shows that what I think here, the pro se did a remarkable job of preserving her rights throughout the proceedings. There is nothing more the pro se, Ms. Kingling, could have done to preserve her rights in this case, and there is nothing more she could have done to demand a fair trial. But ultimately, the defendants, the respondents, their arguments, their facts, their stipulated facts were adopted, and her desire to have you in her affidavit put in was cut down. In the record, you can see the affidavit she submitted to the court, there was an objection made by UCMC as to the affidavit, and part of the affidavit was thrown out because, oh, the pretrial order said you can't bring in medical evidence, and ultimately it became a circular reasoning throughout the trial that, no, you stipulated, look at the pretrial order. Well, you stipulated, look at the pretrial order. I'm obviously paraphrasing and exaggerating, but I think we understand by looking at the transcripts that this is ultimately what happened, as we can see from the record at A188, the dialogue with the court and Ms. Kingling. And I'm not going to read it for the court, but it's on page 17 of our brief and page 18 of our brief. In any event, had Ms. Kingling been provided due process of law, she would have had a chance to have a proper hearing on the discharge of her student loans, because she was not able to present evidence before the court as to just even a basic issue as to ownership of aid of the loans, and because she was not able to present evidence as to any medical issues, which she did not waive knowingly, voluntarily, intelligently, and certainly as a pro se, not at all, it was not also within the discretion of the trial court to deny her that right. As to the Bruner factors, I think it's tough to argue those right now without a full record before the court where a trial had followed due process of law. And this is ultimately a case about due process, and I think the cases we cite to are very persuasive. Obviously, the court can read the cases with regard to COIT and with regard to other cases regarding Rule 16 and the discretion a court has. I think one of the arguments that I see in both of my friends' briefs across the aisle is they say, well, under Rule 16, it's discretionary. The court can tailor, however they want, Rule 16, pretrial orders. But we know that's not the case if the pretrial order just predetermines the outcome of disputed facts that are material to the case. I don't think anyone would question that. So it's really an argument that doesn't apply to the case. Of course, the court must have great discretion in tailoring the evidence, but they can't tailor the evidence to the point where the pro se or even the plaintiff cannot make herself heard. And in this case, she was not heard. And because she was not heard, the case should be reversed, sent back to trial for a proper proceeding in accordance with the Fifth Amendment to the United States Constitution. And that is my argument. Thank you, Mr. Oldenburg. We'll hear first from Counsel for Educational Credit, Mr. Kroon. May it please the court, counsel. My name is Michael Kroon on behalf of Educational Credit Management Corporation, which I'll refer to as ECMC. ECMC is a guarantee agency in the Federal Family Education Loan Program, which I'll and that's the old student loan program, Your Honor, where private lenders would loan money to the borrowers, and they would be guaranteed by either state agencies or nonprofit corporations as guarantee agencies. Those loans would ultimately be reinsured by the federal government. So that's who ECMC is. It's a rare case, Your Honor, where a plaintiff represented or pro se actually names ECMC as a defendant in an adversary proceeding. And the reason for that is because ECMC takes time of these loans once the adversary proceeding is filed. And most plaintiffs don't know much about the guarantors or that the guarantors are responsible for defending these undue hardship adversary proceedings. So it's very common for ECMC to enter a case on a motion to intervene, and most of the time they are consented to, like it was in this case. So typically these undue hardship cases are focusing on the plaintiff and the plaintiff's financial circumstances, and then those are applied to the Bruner test. But in this case, where the appellant is primarily arguing that she was coerced into stipulating to certain facts and thereby violating her due process rights, the appellant raised the issue of a medical complaint that she was precluded from offering evidence of a medical issue at trial. Your Honor, there was no error in that. This was a situation where, number one, she stipulated in the pretrial conference that she had no medical issues, and number two, she refused to turn over any medical documents in discovery, and moreover, the judge or the bankruptcy court warned her that failure to turn over medical records would preclude her from asserting a medical condition at trial, and that's exactly what happened. So that's that, Your Honor, and I guess the overall issue here is there's no evidence of coercion. The stipulated facts in this case arose from the pretrial conference on July 31st, 2018, where the bankruptcy court directed the parties to confer and come up with one single joint pretrial memorandum that contained the facts the parties agreed upon and the facts that they disagreed upon. Other than apparently subsequently changing her mind about some of the facts she stipulated to, she's not pointed to any actual evidence of coercion that occurred at that July 31st pretrial conference, and she has failed to include a transcript of that pretrial conference, preventing really any meaningful appellate review. These stipulated facts did not come out of the air. They weren't sua sponte by the bankruptcy court judge. They were the result of a conference at the pretrial conference between the parties. The marked-up joint pretrial memorandum was the end result of that conference, and it was presented to the court at that pretrial conference. The bankruptcy court very specifically ordered counsel for ECMC to file the marked-up joint pretrial memorandum, which he did the following day, and to circulate a clean version of that mirrored the marked-up version, and counsel for ECMC did that as well, and that's when things kind of went off the rail, and Ms. Tingling decided that she no longer agreed with some of the things that she had stipulated to at that pretrial conference. So this isn't an issue of coercing her into agreeing to any specific facts. It's more about holding her to the facts that she voluntarily stipulated to. Do you have a second point on that? Thank you. The bankruptcy court has broad discretion in preserving its pretrial order and conducting the trial. This is an abuse of discretion standard, and the appellant demonstrated that she was capable of disputing facts at that pretrial conference. As far as ECMC's ownership of the loan, it was stipulated to her in the consent decree. That was never appealed. There's legal ramifications of that. And more to the point, if ECMC doesn't own these loans, what are we doing here? The appellant hasn't offered any evidence of who else might own these, and her entire case would necessarily fail if she doesn't have the ownership of this outbound in the case. She certainly can't get the finding of non-dischargeability based on an undue hardship without the proper party in this case. ECMC stepped forward, intervened in this case, said we own these loans, provided the information so that Ms. Tingley could get her day in court on the merits, which she did. There's no evidence of coercion. A new trial is unwarranted, and the bankruptcy court's decision should be affirmed. Thank you. Thank you. Ms. Fickman? Yes, Your Honors. Thank you so much. As counsel for ECMC already discussed the procedural issues, if the court permits, I will go straight to the Bruner test, that argument that appellant makes in this appeal. First, the bankruptcy court correctly applied the test. The court found that Ms. Tingley had not satisfied any of the three prongs of the test. First, she did not show that if she were required to make monthly payments toward her student loan debt, that her standard of living would fall below a minimal level. She earned $50,000 a year, so based on her income, as testified to at trial by a representative of the Department of Education, her monthly payment under the repay program would be $266 per month. That would be the amount she would be required to pay regardless of the total amount owing upon the debt. And this is presuming that Ms. Tingley would consolidate the ECMC debt with the education debt, which would qualify her for $266 per month toward all the loans, ECMC and education loans. So the bankruptcy court appropriately found that Ms. Tingley could afford to make payments of $266 a month. She had tax refunds that averaged out to enough to make those payments. She could trim non-essential expenses. She could maximize her interest in the house that she owned by her sister. There was extensive testimony at trial as to whether Ms. Tingley had sought to refinance the house or whether she should move. But she maintained that she could not make these payments. Now, the second prong of the Brunner test requires that a debtor show additional exceptional circumstances strongly suggestive of continuing inability to repay over an extended period of time. Ms. Tingley didn't put forth any evidence of such exceptional circumstances. She alleged that she had a tumor. As counsel for ECMC stated, Ms. Tingley never put forth any evidence whatsoever regarding this other than her own affidavit. When asked by counsel for ECMC and education to put in this evidence, she refused. She refused to stipulate to a protective order that would keep this evidence confidential. She absolutely refused to put in any evidence regarding her medical condition until right before trial when she sneaks it into the affidavit and then tries to testify to it on stand. However, strangely, at trial, then she acknowledges that this tumor was removed that and she didn't say anything about whether this tumor created an issue in the future that would keep her from being employed. As far as the date of trial, she was still employed. Yes, she said the tumor was removed and she said she had an enlarged lymph node that went into the record at the trial. There was nothing for the court to consider as far as exceptional circumstances with respect to Ms. Tingley's alleged medical condition. She claims that she is an older individual and that she may not have as lengthy a work life as a younger individual might, but courts across the country have held that people who are older than Ms. Tingley, people who make far less money per year, are not warranted to receive discharges of student loan debt based on the standards set forth in Bruner and adopted by numerous other circuit courts across the country. Ms. Tingley also didn't meet the third prong of the Bruner test, which requires showing of a good faith effort to repay the loans. She made no payments toward the loans held by Department of Education. She was not required to make any payments at that time because up until shortly before trial, she had been in a degree producing program and therefore she had received forbearance. She was not required to make payments. She will now be required to make payments, but she didn't take advantage of the repay. She didn't make payments toward ECMC. She didn't choose to take advantage of the repay option for $266 a month. Instead, she sought discharge in bankruptcy. And notably, the courts consider, as numerous cases we cited in our brief, the ratio of a debtor's student loan debt to the total debt for which she is seeking a discharge. Yes, thank you. Here, almost all the debt that Ms. Tingley is seeking a discharge is her student loan debt. She reaffirmed the mortgage debt on the house that she owns with her sister. She entered into bankruptcy merely to discharge a debt for which she put forth no evidence of making any repayments at all. Accordingly, we submit that the bankruptcy court properly determined that Ms. Tingley did not qualify for a discharge of her student loan debt on the basis set forth under 11 U.S.C. Section 523A.8. The court gave Ms. Tingley, as a pro se, more than ample leeway at trial. And she did not satisfy the standard. Therefore, the court should affirm the decision of the district court, which upheld the bankruptcy court's decision. If your honors have any questions, I'm happy to answer them. Thank you, Ms. Dickman. I'll turn to Judge Raji in case you have any questions for either Mr. Rosenberg, Mr. Kuhn, or Ms. Dickman. Mr. Rosenberg, may I just ask you whether I understand the record correctly that at the time the joint pretrial order stipulation was emerged from the conference, if I can say that, that your client also did note at that time various matters that she, various factual matters that she did dispute? That is correct, Judge Raji. At age 69, in fact, she submitted two, and timely so, two of her own joint pretrial memorandums. That's after the fact. I am saying contemporaneous with the pretrial order stipulation, I thought she nevertheless noted disputed facts. Oh, most certainly. And I'm asking that because for you to tell us that the district judge erred here in accepting that joint pretrial order stipulation from a pro se, I understand that, but a pro se who simultaneously noted disputed facts, I'm not sure how I see that we then say that, well, she got to dispute even more later on. What am I missing? Well, it certainly is the court, bankruptcy court, it instructed a trial. She didn't, those things were not to be considered. Even if those, that testimony came out, it was not to be considered. If I recall the transcript correctly, and it even came to a point where at A-188, the court said, there's no, there's no factual controversy in this trial, whether or not ECMC made a student- Right, on those matters that had been stipulated. Right. And they weren't stipulated, the word stipulated is not an accurate, it's a word that, a legal term of word, obviously, but it does not accurately frame as to what Ms. Tingling did, she never stipulated these facts. It was what the court adopted ultimately, the pretrial order. But it's incorrect what my friend across the aisle says that she stipulated, and if the government's adopting this position, that she stipulated to these facts in some pretrial conference where you see the signatures of both defense counsel, Ms. Tingling clearly did not sign her name to that marked up. They call it the marked up version of whatever the marked up version is. It's not a version the court, if the court used it- All right, you're far from my questions. I don't want to take up other judges' time. Thank you. My apologies, Judge. Thank you, Judge Cabranes. Mr., any questions for Mr. Kuhn or Ms. Thickman, Judge Rodgers? No, thank you, though. Right. Judge Sullivan, any questions for any of these counsel? Yeah, I have a couple of questions. Mr. Rosenberg, first of all, am I wrong? Did your client's own first proposed draft joint pretrial order include no medical or psychological disabilities? In a draft, she included what you could say, yes, so that's, you're 100% right, but I think in her draft also, you get to the end of the draft, so we're reading into it, right, in the proper way we read it. You see there's this whole argument that go after. She's clearly copying what the other attorneys have put together and adding her part to the end of it. If you see at the later paragraphs, she then goes into detail explaining what the other why these are issues. So, you're 100% right, Judge. In a draft, it appears that she's stipulating to that, but it's not a stipulation. She's explaining, she's adopting the wording. But then she later knows to identify those issues that she doesn't agree with at the pretrial conference, right? There are disputed issues after that first, that pretrial conference, correct? Correct, Judge. But medical issues are not identified among those disputed issues, correct? In both of the, yeah, in both of the drafts she submits, she does not, I believe, go into detail on the medical issues. I believe in her affidavit, she does prior to the pretrial or after the pretrial order submitted. In her affidavit, she brings it up. Okay, and then there's also then correspondence in discovery where your client declines to sign a confidentiality agreement and there, and also doesn't produce any of the requested medical information, right? That would be correct. Is that 320 to 323 in the record of the appendix? So, that's correct. That's 100% correct. All right. Okay, I have no further questions. Thank you. Thank you. All right. Thank you all. Thank you all. We'll reserve the session.